**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

_____
                               :

FIXTURE SPECIALISTS, INC.,         :       Civil Action No. 07-5614(FLW)
                               :
           Plaintiff,         :
                               :       **OPINION**
           v.                  :
                               :
GLOBAL CONSTRUCTION, LLC, et al., :
                               :
           Defendants.       :
_____ :

**WOLFSON, U.S.D.J.**

      This case concerns a contract dispute between Plaintiff Fixture Specialists, Inc. ("Plaintiff" or "Fixture") and defendants, Global Construction, LLC ("Global") and Liberty Mutual Insurance Co. ("Liberty")(collectively, "Defendants"), arising from the construction of a housing project in Princeton, New Jersey.  Global, the general contractor for the project, subcontracted with Plaintiff for plumbing work, and Liberty issued a labor and material payment bond to Global in connection with the project.  In the instant matter, Plaintiff moves for partial summary judgment on the issue of whether Defendants can assert a defense to Plaintiff's claim for certain payments based upon a "Pay-When-Paid" clause contained in the agreement between Global and Fixture.[1]  The questions presented in this motion, which require an interpretation of the subcontract between the parties, are (1) whether under New Jersey contract principles the "pay-when-paid" clause in the parties'

---

[1] Defendants rely upon this provision in their Affirmative Defenses, numbers 13 and 14, of their Answer.

1

agreement establishes a condition precedent to any obligation of Global or Liberty, a surety company, to pay Plaintiff, or whether it merely postpones payment for a reasonable time frame; and (2) whether the payment clause conflicts with the anti-lien waiver provisions of the construction lien law.  For the reasons set forth below, Plaintiff's motion is **DENIED**.

## BACKGROUND

The issues herein are legal in nature and thus, for the purposes of this motion, the Court will not make findings of fact not pertinent to the present dispute.   Global is a construction firm which has served as general contractor on a number of projects, including the Estates at Princeton Junction project (the "Project"), a residential complex located in Princeton, New Jersey.  The complex was owned by Princeton Junction Apartments, L.P. (the "Owner").  See Pechin's Dec., ¶¶ 1 and 3.

Defendant Liberty, a surety company, issued a labor and material payment bond in the amount of $38 million to Global in connection with the Project (the "Surety Bond"). Id. ¶ 4.  Under the Surety Bond, Liberty has to satisfy any and all claims made for unpaid labor or materials provided to the Project.  See the Surety Bond.

On May 25, 2005, Global entered into a subcontract (the "Subcontract") with Fixture under which Fixture agreed to perform plumbing work on the Project.  See Plaintiff's Statement of Undisputed Facts (Plaintiff's Statements"), p. 5.  The Subcontract obligated Global to pay Fixture $2,262,727.00 for the work.  The payments were to be made monthly upon application by Fixture. Id. The Subcontract also provided that Global would withhold 10% of every progress payment (the "Retainage"). Id. In or about November 2006, Fixture completed the work and applied to Global for payment of the Retainage in the amount of $230,466, as well as $806,091 for additional plumbing work performed by Fixture;

2

however, Global refused to pay because it had not been fully paid by the Owner for the

Project.  Id. at p. 6.[2]

Central to this matter is a provision contained in the Subcontract which states:

> 5.3.   Pay When Paid - Subcontractor agrees that Contractor shall never be obligated to pay Subcontractor under any circumstances, unless and until funds are in hand received by Contractor in full, less any applicable retainage, covering the Work or material for which Subcontractor has submitted an Application for Payment.  This is a condition precedent to any obligation of Contractor, and shall not be construed as a time of payment clause.   This condition precedent also applies to Contractor's obligation to pay retainage, if any, Contractor shall never be obligated to pay retainage to Subcontractor until Contractor has received its retainage in hand in full.   This paragraph governs all other portions of this Subcontract, and any conflicting language shall be modified or deemed to be consistent herewith.

See Section 5.3 of the Subcontract dated May 25, 2005.  Global invokes this provision and

maintains that full payment by the Owner is a condition precedent to any obligation of

Global's duty to pay Plaintiff .  Consistent with that position, Liberty also refuses to pay

Fixture on the surety bond since it declares that it is entitled to the benefit of all defenses

of its principal, Global.

Now in this motion, Plaintiff challenges (1) the validity of the "Pay-When-Paid"

---

[2]

In their Statement of Facts, Defendants extensively narrate the substandard quality of Plaintiff's plumbing work.  In that regard, they cite to various provisions of the Subcontract to illustrate that Plaintiff should not be paid because it allegedly breached the agreement by providing low quality work.   In so doing, Defendants urge the Court to find that irrespective of the validity of the "Pay-When-Paid" clause, Plaintiff's motion should be denied because there are material issues of fact as to whether Plaintiff should be paid at all for its allegedly substandard work pursuant to the Subcontract.   The Court finds this position unavailing on this motion.   Whether or not Plaintiff produced quality work is not the subject of this motion; rather, the legal determinations on this motion are ripe for the Court's review because these determinations will elucidate the rights and liabilities of the parties under their agreement as the case moves forward.

clause by urging the Court to find the clause unenforceable pursuant to New Jersey's contract principles; and (2) Liberty's position with respect to using the same clause as a defense to nonpayment.

## DISCUSSION

### I.   Standard of Review

Summary judgment is appropriate where the Court is satisfied that "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. (56)(c); Celotex Corp. v. Catrett, 477 U.S. 317, 330 (1986). A fact is "material" only if it might affect the outcome of the suit under the applicable rule of law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). Disputes over irrelevant or unnecessary facts will not preclude a grant of summary judgment. Id. The burden of establishing that no "genuine issue" exists is on the party moving for summary judgment. Celotex, 477 U.S. at 323. Once the moving party satisfies this initial burden, the non-moving party "must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e). To do so, the non-moving party must "go beyond the pleadings and by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" Celotex, 477 U.S. at 324. In other words, the non-moving party must "do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986); see also Ridgewood Bd. of Ed. v. Stokley, 172 F.3d 238, 252 (3d Cir. 1999). A genuine issue of material fact is one that will permit a reasonable jury to return a verdict for the non-moving party. Anderson, 477 U.S. at 248. In evaluating the evidence, a court must "view the inferences to be drawn from the

4

underlying facts in the light most favorable to the [non-moving] party." <u>Curley v. Klem</u>, 298 F.3d 271, 276-77 (3d Cir. 2002)(citations omitted).

## II.    Whether Section 5.3 of the Subcontract Create a Condition Precedent to Global's Liability to Fixture

Defendants rely upon Section 5.3 of the Subcontract in their refusal to pay Plaintiff for work performed.  Specifically, Global reasons that because it has not received full payment from the Owner of the Project, it is exercising its right under the Subcontract to withhold payment from Fixture.[3]  In addition, Global posits that the clear and unambiguous language of the provision disavows Plaintiff's attempt to render it unenforceable. Responding to Global's position, Plaintiff cites various cases that it believes would demonstrate that the Subcontract at issue contains no express intention of the parties to transfer the risk of collection to Fixture.  It argues that absent such intention, New Jersey law dictates that Section 5.3 simply permits Global a reasonable time to pay Fixture.  The Court will now turn to a discussion of the relevant case law.

Courts have not uniformly construed "pay-when-paid" clauses.  The premiere case that squarely addresses the issue in this district is <u>Seal Tite Corp v. Ehret, Inc.</u>, 589 F.Supp. 701 (D.N.J. 1984).  In <u>Seal Tite</u>, the court, following the reasoning expounded in the Sixth Circuit case, <u>Thos. J. Dyer Co. v. Bishop Int'l Engineering Co.</u>, 303 F.2d 606 (6th Cir. 1962), construed a subcontract "pay-when-paid" provision as postponing payment for a reasonable period of time rather than a conditional promise to pay by the general contractor.  The court

---

[3]

While there is some dispute as to whether Global has been paid by the Owner, Plaintiff states that for the purpose of this motion, it assumes that Global has not been paid and is not asking the Court to consider the prospect that the Owner has paid Global either in part or in full.  Defendants concur.  Respecting the parties' stipulation, the Court will make that assumption when determining the legal issues.

5

explained that because the payment clause did not make reference to the possibility of the owner's insolvency, but did refer to the amount, a time and method of payment, the clause was merely a provision affording the general contractor a reasonable time to procure from the owner the funds necessary to pay the subcontractor. Seal Tite, 589 F.Supp. at 704 (quotations omitted). Ultimately, the court's determination turned on whether there is any indication in the payment clause that the subcontractor would undertake any risk in the event the owner of the project would become insolvent. Id. Simply put, there must be express language clearly showing the intention of the parties to shift the risk. Id. The Dyer approach has been recognized as the leading decision in this area. Lafayette Steel Erectors, Inc. v. Roy Anderson Corp., 71 F. Supp. 2d 582, 587 (S.D. Miss. 1997) ("Dyer has been cited and relied upon repeatedly . . . ."); Mrozik Constr., Inc. v. Lovering Associates., Inc., 461 N.W.2d 49, 51 (Minn. Ct. App. 1990) (describing Dyer as "a leading case on which the Restatement [(Second) of Contracts] illustration was based"); Watson Constr. Co. v. Reppel Steel & Supply Co., 598 P.2d 116, 119 (Ariz. Ct. App. 1979) (terming Dyer "a leading decision in this area").

The New Jersey Appellate Division, in an unpublished opinion, adopted the reasoning of Seal Tite and held that indeed in New Jersey "if a subcontractor is to undertake the collection risk, contrary to the usual allocation of risks among the parties to a construction contract, the undertaking must appear in clear and unequivocal language in the subcontract." Avon Bros., Inc. v. Tom Martin Construction Co., No. A-740-99, 2000 WL 34241102, at * 7-9 (App. Div. Aug. 30, 2000).[4]

---

[4]

Although Avon is an unpublished opinion, this case is the only state authority on this issue in New Jersey. The cogent reasoning of the Avon court is highly persuasive, particularly

Recently, in <u>Titan Stone, Tile & Masonry, Inc. v. Hunt Construction Group, Inc.</u>, No. 05-3362, 2007 WL 869556 (D.N.J. 2007), a court in this district following the holding of <u>Seal Tite</u>, held that there were substantial issues of fact as to whether the payment clause in that case should be read to absolve the general contractor of any obligation to pay retainage to the subcontractor until it recovers the corresponding funds from the owner of the project. <u>Id.</u> at *6-7. The payment clause in <u>Titan</u> read: "Final Payment by the Owner to [subcontractor] shall be an express condition precedent to [contractor's] duty to make Final Payment to [subcontractor]."[5] The court there found such language insufficient to establish a condition precedent.  However, the court expressed that there may be other provisions in the agreement that would indicate a clear intent of the parties to shift the risk to subcontractor.  As such, the court denied summary judgment. <u>Id.</u> at *6.

Examining out-of-state authorities, in <u>MidAmerica Const. Management Co., Inc. v. Mastec North America, Inc.</u>, 436 F.3d 1257 (10th Cir. 2006), the Tenth Circuit first noted the distinction between "pay-when-paid" and "pay-if-paid" clauses:

> A typical "pay-when-paid" clause might read: "<u>Contractor shall pay subcontractor within seven days of contractor's receipt of payment from the owner.</u>" Under such a provision in a construction subcontract, a contractor's obligation to pay the subcontractor is triggered upon receipt of payment from the owner. Most courts hold that this type of clause at

since the court found substantial support for its conclusion in other jurisdictions.  <u>Avon</u>, 2000 WL 34241102 at *7 (citing various cases that expressed similar reasoning).  Indeed, both parties in this case cite to and rely on <u>Avon</u>.

[5] As discussed later in this Opinion, unlike the payment clause in <u>Titan</u>, the "Pay-When-Paid" provision of the Subcontract in this case uses unambiguous language to clearly indicate the intent of the parties to shift the risk of nonpayment to Fixture, the subcontractor.  In particular, Fixture agreed that Global "shall never be obligated to pay . . . under any circumstances, unless and until funds are in hand received by Contractor in full" from the Owner.

least means that the contractor's obligation to make payment is suspended for a reasonable amount of time for the contractor to receive payment from the owner. The theory is that a "pay-when-paid" clause creates a timing mechanism only. Such a clause does not create a condition precedent to the obligation to ever make payment, and it does not expressly shift the risk of the owner's nonpayment to the subcontractor. . . .

A typical "pay-if-paid" clause might read: "<u>Contractor's receipt of payment from the owner is a condition precedent to contractor's obligation to make payment to the subcontractor; the subcontractor expressly assumes the risk of the owner's nonpayment and the subcontract price includes this risk.</u>" Under a "pay-if-paid" provision in a construction contract, receipt of payment by the contractor from the owner is an express condition precedent to the contractor's obligation to pay the subcontractor. A "pay-if-paid" provision in a construction subcontract is meant to shift the risk of the owner's nonpayment under the subcontract from the contractor to the subcontractor. In many jurisdictions, courts will enforce a "pay-if-paid" provision only if that language is clear and unequivocal. Judges generally will find that a "pay-if-paid" provision does not create a condition precedent, but rather a reasonable timing provision, where the "pay-if-paid" provision is ambiguous.

<u>Id.</u> at 1261-62 (citations omitted)(emphasis added).  Applying Texas and New Mexico state laws, the court held that because the payment clause in that case contained the language – "all payments to Subcontractor by Contractor are expressly contingent upon and subject to receipt of payment for the Work by Contractor from Owner" – it sufficiently created a condition precedent.  <u>Id.</u> at 1263.  Importantly, the court explained that while the subcontract agreement in that case failed to include <u>explicit language that the subcontractor would assume the risk of the owner's nonpayment and the subcontract price includes such risk</u>, the omission is not enough to throw the intent of the contracting parties into doubt. <u>Id.</u>(emphasis added); <u>see</u> <u>Allen Electric Co. v. Fidelity and Deposit Co.</u>, 1989 Tenn. App. LEXIS 385, at *2, 6-7 (Tenn. Ct. App. May 24, 1989)(finding a binding condition precedent in payment clause by using the phrase "[w]ithin seven (7) days after receipt by Contractor

from Owner of monies in payment . . . and only in the event of receipt of such monies, Contractor will pay the same over to the Subcontractor"); Robert F. Wilson, Inc. v. Post-Tensioned Structures, Inc., 522 So.2d 79, 80 (Fla. 3d DCA 1988)(finding a condition precedent in contract stating that "final payment is contingent upon payment to the Contractor" and that "in the event a controversy occurs between the Owner and the General Contractor concerning the Contract with the Owner . . . no compensation for these items shall be due the Subcontractor from the Contractor until payment for them is received by the Contractor").

In the present case, the determination whether the payment clause in the Subcontract creates a condition precedent is a straightforward inquiry, because the language of the clause specifically states that the "Subcontractor [Fixture] agrees that Contractor [Global] shall never be obligated to pay Subcontractor under any circumstances, unless and until funds are in hand received by Contractor in full" and that "[t]his is a condition precedent to any obligation of Contractor, and shall not be construed as a time of payment clause." Global submits that the language unequivocally establishes a condition precedent.

On the other hand, relying on New Jersey's public policy of providing greater protection to subcontractors, Plaintiff controverts that the failure of the payment clause to expressly state a shifting of the risk to the subcontractor renders the clause only a time of payment provision.  However, such a narrow position was rejected in Avon, wherein the state appellate court opined that there are no magic words in drafting a payment clause. "It is not the use of 'when' or 'if' that is dispositive of the enforceability of the clause, but whether there is clear evidence of an intent by both parties to shift the risk of collection."

Id.  Such risk is "not [to] be assumed or inferred."  Id.  Additionally, the court's holding took into consideration New Jersey's protective stance for subcontractors; yet, even in light of that public policy, the decision afforded the parties the freedom to contract for a condition precedent.  Nevertheless, the Court cautioned that the language of the payment clause must be clear and unequivocal to express the parties' intent.  Id. at *6-7.

Here, the express language employed in the payment clause in Section 5.3 is clear – the parties intended to shift any and all circumstances of Owner's nonpayment to Fixture.  Undoubtedly, the all-encompassing nature of the phrases "never be obligated to pay " and "under any circumstances" clearly and unambiguously expressed that Fixture has agreed to assume the risk of the Owner's nonpayment.  The Court's construction is further supported by the fact that the parties do not dispute that there is no ambiguity in any of the provisions in the Subcontract, nor does the Court find any.  Thus, Plaintiff's motion on this basis is denied.

### III.   Whether Section 5.3 of the Subcontract Violate New Jersey's Anti-Waiver Statute of the Construction Lien Law

Having found that the language of Section 5.3 of the Subcontract is sufficient to establish a condition precedent, Plaintiff advances alternatively that the payment clause violates New Jersey's anti-waiver statute of the construction lien law.  For support, Plaintiff first cites N.J.S.A. 2A:44-38 to demonstrate the protective nature of New Jersey's law with respect to contractors in general.  The provision states in relevant part: "Waivers of construction lien rights are against public policy, unlawful, and void, unless given in consideration for payment for the work, services, material men or equipment provided or to be provided, and such waivers shall be effective upon and to the extent that such payment

is actually received." N.J.S.A. 2A:44-38. Next, Plaintiff cites N.J.S.A. 2A:44A-8, which provides that a lien claimant must verify that the money claimed is "due and owing at the date of filing, pursuant to claimant's contract . . . ." Fixture argues that together these provisions protect subcontractors from the draconian effect of "pay-when-paid" clauses. Specifically, Section 5.3 prevents a subcontractor from filing a construction lien for work performed because New Jersey requires that a claimant filing a lien must verify that the money claimed is "due and owing at the date of the filing." Plaintiff submits that if Section 5.3 imposes a condition precedent to payment, it could not file a construction lien since there would be no funds "due and owing" by Global to Plaintiff and therefore, the payment clause conflicts with the anti-waiver provision set forth in N.J.S.A. 2A:44A-8.

Fixture relies on two out-of-state authorities, West Fair Electric Contractors v. Aetna Casualty & Surety Co., 661 N.E.2d 967 (N.Y. 1995) and Wm. R. Clarke Corp. v. Safeco Insurance Co. of America, 15 Cal. 4th 882 (1997). Both courts examined their respective state's lien law and held that "pay-if-paid provisions . . . are contrary to the public policy . . . and therefore unenforceable because they effect an impermissible indirect waiver or forfeiture of the subcontractors' [] protected mechanic's lien rights in the event of nonpayment by the owner." Clarke, 15 Cal.4th at 886; West Fair, 661 N.E.2d at 972 ("provision which forces the subcontractor to assume the risk that the owner will fail to pay the general contractor is void and unenforceable as [contrary] to public policy . . ."). Fixture urges the Court to adopt the same rationale here.

At the outset, the Court remarks that the New Jersey appellate court in Avon, relying on the state's Supreme Court decision in Thomas Group v. Wharton Senior Citizen Housing, 163 N.J. 507 (2000), cast significant doubt on Plaintiff's very argument advanced here.

11

Although <u>dicta</u>, the appellate court persuasively rejected the subcontractor's reliance on <u>West Fair</u> and <u>Clarke</u> by opining that the highest court in New Jersey dismissed "an overly technical interpretation of the 'due and owing' requirement for filing a lien claim, thereby calling into question the underlying premise of the New York and California decisions." <u>Avon</u>, 2007 WL 34241102 at *6.  With this pronouncement in mind, the Court will turn to the New Jersey Supreme Court's decision.

In <u>Thomas</u>, the Court held that even though a contractor did not technically perform all of the work or complete all of the conditions required for payment under a contract, it nevertheless could file a lien to protect the work that was completed.  <u>Id.</u> at 519.  In formulating its decision, the Supreme Court balanced the competing interests of the owner and the contractor and fashioned a remedy in accordance with the statutory framework of the construction lien law.  In particular, the Court interpreted the phrase "due and owing" in section 8 to mean that even if payment was not technically due under the contract between the parties to the agreement, a claimant could file its lien against the owner's property to protect its interest; however, foreclosure of the lien by the owner would be stayed until all the contractual preconditions to payment were satisfied. <u>See</u> <u>Id.</u> at 519-21.  This analysis applies with equal force to the present circumstances; the anti-waiver provision does not preclude Fixture from filing a construction lien against the Owner, even though the obligations of Global to pay Fixture are not "technically" due because the condition precedent established by the "Pay-When-Paid" clause of Section 5.3 has not been met. This right of Plaintiff to file its lien is in harmony with the purpose of construction lien law.  <u>See</u> <u>e.g.</u>, <u>Wellington Power Corp. v. CNA Surety Corp.</u>, 614 S.E.2d 680 (W. Va. 2005)(in public construction project, pay-if-paid condition precedent clause in subcontract

12

did not violate the West Virginia public policy in public bond statute); <u>Star Contracting</u> <u>Corp. v. Manway Constr. Co.</u>, 32 Conn. Supp. 64 (Ct. Sup. Ct. 1973).

Attempting to circumvent <u>Thomas</u>, Plaintiff avers that factually <u>Thomas</u> involved a contractor's own failure to perform contractual conditions precedent to payment, and not the owner's lack of performance as demonstrated in this case.  However, that distinction is of no moment.  The focus is not which party fails to complete the obligations of the contract, but rather the right of the contractor/subcontractor to file a lien.  Here, Plaintiff is not without any remedy, because it has the right, pursuant to <u>Thomas</u>, to obtain a lien against the Owner without regard to the condition precedent imposed by Section 5.3.

Moreover, Plaintiff is grasping at straws when it argues that if it in fact had filed a lien, it would have been in bad faith because the payment under the Subcontract was not "due and owing" since the conditions of Section 5.3 had not been satisfied.  Equally without merit is Fixture's suggestion that the Owner can choose to forego payment for an indefinite period of time long after the ninety day filing period for liens has passed and consequently, foreclose Plaintiff's right to file a lien.  The <u>Thomas</u> decision dispenses with Plaintiff's concerns.  The Supreme Court, addressing these exact issues, expounded that its decision protects the contractor from "risk [of] losing its statutory lien by waiting until all of the contractual preconditions to payment were satisfied before it asserted its lien." <u>Thomas</u>, 163 N.J. at 520.  Further, "in the future the interests of an owner can adequately be protected by staying the contractor's right to enforce its lien until the contractual preconditions for payment are met . . . . This accomplishes the legislative purpose of affording lien protection to contractors, while safeguarding the owner's right to insist on strict compliance with contractual terms of payment." <u>Id.</u> at 520.  Accordingly, consistent

with New Jersey Supreme Court's decision in <u>Thomas</u>, this Court holds that New Jersey's anti-waiver statute does not invalidate "pay-when-paid" clauses on public policy grounds.

### IV.   Whether Liberty as a Surety Company Can Avoid Payment on Bonds by Relying on "Pay-When-Paid" Clauses

Regardless of Section 5.3, Fixture requests that Liberty pay on its Surety Bond. However, Liberty also invokes the payment clause as a defense to nonpayment. To that end, Liberty persists that it may assert all of the defenses available to its principal, Global.  The crux of Liberty's contention is that the Surety Bond expressly provides that Fixture is entitled to be paid by Liberty only if Fixture is owed sums which are "justly due" by Global.[6] Liberty reasons that because the condition precedent of Section 5.3 has not been met, no sums are therefore "justly due" under the Surety Bond.

As there is no New Jersey authority directly on point, Liberty directs the Court to out-of-state cases that have addressed this issue.  <u>See</u> <u>Allen Electric</u>, 1989 Tenn. App. LEXIS 385; <u>Wellington</u>, 614 S.E.2d 680.  In <u>Allen Electric</u>, the court reviewed a "pay-when-paid" clause in a subcontract in conjunction with a payment bond containing the language "justly due," like the Surety Bond in this case.  The court found that the surety steps into the shoes of the contractor and "may avail itself of all [the defenses] of [the principal]."  <u>Id.</u> at *4.  It

---

[6]

Paragraph 2 of the Surety Bond provides:

> The above named Principal and surety hereby jointly and severally agree with the Owner that every claimant as herein defined, who hast not been paid in full before the expiration of a period of ninety (90) days after the date on which the last of such claimant's work or labor was done or performed, or materials were furnished by such claimant may sue on this bond for the use of such claimant, prosecute the suit to final judgment for such sum or sums as may be justly due claimant, and have execution thereon.  The owner shall not be liable for payment of any costs or expenses of any such suit.

acknowledged that since the "pay-when-paid" clause was a valid condition precedent to the contractor's obligation to pay the subcontractor, the surety was "relieved of liability at this time because there are no sums 'justly due' the subcontractors within the terms of the payment bond." Id. at *19. Similarly, the Wellington court reached the conclusion that under West Virginia surety law, a condition precedent in the contract between a contractor and subcontractor prevents the subcontractor from proceeding in an action against the surety if the condition has not been satisfied. Wellington, 614 S.E.2d at 685-86.

Recognizing that Allen Electric and Wellington hold the contrary position, Plaintiff cites a number of cases for the proposition that a surety may not assert the principal's defense based on "pay-when-paid" language in the subcontract when that language is not expressly incorporated into the contract payment bond. For example, in Moore Brothers Co. v. Brown & Root, Inc., 207 F.3d 717 (4th Cir. 2000), the Fourth Circuit, construing substantially similar surety bond language, explained that because the subcontractor is suing under the bond against the surety and not the subcontract, there is "no indication that the parties intended the phrase 'sums justly due' to incorporate the contingency of payment by the Owners." Id. at 723. The court reasoned that "the very purpose of securing a surety bond contract is to insure that claimants who perform work are paid for their work in the event that the principal does not pay. To suggest that nonpayment by the Owners absolves the surety of its obligation is nonsensical, for it defeats the very purpose of a payment bond." Id. (emphasis omitted). The court based its ruling on cases that Plaintiff here utilizes. See OBS Co. v. Pace Constr. Corp., 558 So.2d 404, 408 (Fla. 1990)("it would be inequitable to nullify the bonding company's liability because the owner has not paid the contractor"); Brown & Kerr. Inc. v. St. Paul Fire and Marine Ins. Co., 940 F.Supp. 1245

15

(N.D. Ill. 1996)(distinguishing that the subcontractor is using under the Bond and not the subcontract and therefore, a "pay-when-paid" clause in a subcontract does not preclude the subcontractor from looking to the surety for payment when the principal's liability had not matured); Shearman & Assoc., 901 F.Supp. 199 (D.V.I. 1996).

A review of the cases that place liability on the surety even when the principal's debt has not become due because of a payment clause, centered their reasons on a particular state's public policy. These courts rely on principles of equity in finding that a surety should not escape liability simply by invoking a "pay-when-paid" provision in a subcontract negotiated between a contractor and subcontractor. They further explain that allowing such a defense defeats the very purpose of sureties.[7]  Regardless of the out-of-state law cited by the parties, because this is a matter of state law, it is incumbent on the Court to predict how New Jersey would decide the issue.

In New Jersey, "[s]uretyship is a contractual relation resulting from an agreement whereby one person, the surety, engages to be answerable for the debt, default or miscarriage of another, the principal." New Jersey Div. of Taxation v. Selective Ins. Co. of

_____

[7]

A similar result obtains in cases brought pursuant to the Federal Miller Act. In such cases, a surety cannot enforce a conditional payment clause in its principal's subcontract. Notably, the Ninth Circuit in United States ex rel. Walton Technology v. Weststar Engineering, Inc., 290 F.3d 1199 (9th Cir. 2002), interpreting the Miller Act, found that this federal statute expressly represented a congressional effort to ensure protection for subcontractors. Id. at 1205.  Importantly, however, the court stated that federal law, not state statute or common law principles, is controlling in Miller Act suits. Id. at 1206 (A payment bond surety is entitled to the defenses of its principal "only to the extent that it is consistent with the rights and obligations created under the Miller Act").  Recognizing this difference, the Supreme Court of West Virginia in Wellington held that pursuant to state surety law, a surety is entitled to all the defenses of its principal.  Wellington, 614 S.E.2d at 687.  Likewise, the Court here is confronted with a private construction project in New Jersey and thus, only state surety law is implicated.

16

Am., 399 N.J. Super. 315, 324 (App. Div. 2008)(quotation and citations omitted).  "While surety bonds have been included within definitions of insurance for some purposes, suretyship is not generally considered to be insurance."  New Jersey Property-Liability Ins. Guar. Ass'n v. Hill Intern., Inc., 395 N.J. Super. 196, 202 (App. Div. 2007).  The following distinction is paramount:

> There is an essential difference, in legal effect, between covenants of indemnity, strictly-that is, of indemnity against loss-and the covenants to pay, or assume or stand for the debt, or a surety's liability thereon. A right of action accrues on those of the latter class as soon as the debt matures and is unpaid, because the liability then becomes absolute, and the failure to pay is a breach of the express terms of the covenant.

Westville Land Co. v. Handle, 112 N.J.L. 447, 452 (Sup. Ct. 1934).  Simply put, in the case of surety, "the 'insurer' is essentially liable secondarily, regardless of how the liability may be labeled for legal analysis."  New Jersey Property, 395 N.J. Super. at 203.

Under the common law, "the principal and sureties are equally and primarily liable in case of a breach of [the bond's] conditions and the liability of the sureties is, within the terms of the contract and controlling statutes, coextensive with that of the principal."  In re Estate of Lash, 169 N.J. 20, 29 (2001)(citations and quotations omitted).  In the event of a default by the principal, the third-party for whose benefit the principal obtains a surety bond may proceed on the bond.  Id.  Indeed, "a surety's liability will accrue at the same time as the principal's liability."  In re Integrity Ins. Co., 147 N.J. 128, 147 (1996).  In other words, the liability of a surety is conditioned on accrual of some obligation on the part of the principal; the surety will not be liable on the surety contract if the principal has not incurred liability on the primary contract.  Id.; see In re Estate of Lash, 169 N.J. at 30; Selective Ins., 399 N.J. Super. at 325; see also  Nutz v. Murray-Nutz, Inc., 109 N.J. Eq. 95,

17

98 (1931) ("[a]s against the principal, the surety is only bound to pay what the principal cannot").

The central theme imbedded in New Jersey's concept of suretyship is the surety's unique character – a surety's liability is triggered only when the principal's debt matures. This concept differs from a typical insurance policy. Indeed, the New Jersey courts have made clear:

> The nature of the risk assumed by the party in the role of 'insurer' is a major distinction between insurance and the arrangements of guaranty and surety . . . . [A] An insurer is the primary party liable upon the occurrence of the contingency, and . . . must bear the ultimate loss. In the classic case of surety or guaranty, on the other hand, the 'insurer' is essentially liable secondarily (regardless of how the liability may be labeled for legal analysis). <u>A surety is ordinarily entitled to indemnity from the principal in case the surety is compelled to perform.</u>"

<u>New Jersey Property</u>, 395 N.J. Super. at 203-04 (emphasis added). The law focuses on the relationship of the surety and the principal in defining when liability accrues. <u>See</u>, <u>generally</u> <u>Id.</u>

Applying this important distinction, the Court questions the applicability of the cases supporting Plaintiff's view – these cases appear incongruent with New Jersey state surety law. Particularly, the focus of these out-of-state cases seems to be  the relationship of the contractor and the owner. This is evident by the reasoning set forth in <u>Bonavist v. Inner City Carpentry, Inc.</u>, 244 F.Supp.2d 154, 158 (E.D.N.Y. 2003), wherein the court, following New York state court decisions applying state law, found convincing that: "the defendant surety was liable under its payment bond because the general contractor, as the owner's agent, intended to substitute its personal liability for that of the owner and the defendant surety's unconditional payment bond reflected that intent." <u>Id.</u> It is this intent the court

18

believed to be dispositive.[8]  However, the Court cannot ignore that the cases, like Bonavist, cited by Plaintiff do not make the distinction between the effects of an insurance policy and a surety bond, a distinction that New Jersey law has drawn.

In addition, underlying surety and contract principles are not trumped by the public policy considerations reflected in these decisions, as evidenced by the fact that despite the protective nature of New Jersey's law towards subcontractors, the state appellate court in Avon and the district court in Seal Tite found that the parties' freedom to contract prevailed – so as to permit a shifting of the risk of nonpayment to subcontractors when clearly bargained for.  Similarly here, if the Court were to depart from those principles, it would erode and abrogate the state's established surety law. See Wellington, 614 S.E.2d at 685-86 ("freedom to contract is a substantial public policy that should not be lightly dismissed," so when a court is "asked to void a contract based on a public policy," the court should do so "only in cases free from doubt"); see also  Star Contracting Corp. v. Manway Construction Co., 337 A.2d 669, (Conn. Super. Ct. 1973)(the liability of a surety is conditioned on the accrual of some obligation on the part of the contractors as principals. Because the contractors had not incurred liability on the primary contract with the subcontractor based on the subcontractor's failure to allege payment by the local housing authority, the court determined that the surety was not liable on the surety bond); St. Paul Fire & Marine Insurance Co. v. Georgia Interstate Electric Co., 370 S.E.2d 829 (Ga. Ct. App. 1988)(a surety is entitled to the benefits of the conditional payment clause).

---

[8]

Another distinguishable aspect of Bonavist is that New York has found that "pay-when-paid" clauses violate public policy and thus are not enforceable in that state.  See Id. at 157-58.

Thus, consistent with the objectives of the New Jersey surety law, the Court holds that if a condition precedent has not been satisfied pursuant to a valid "pay-when-paid" clause in a subcontract, a surety may use such clause as a defense against the subcontractor for demand of payment, because the contractor's duty to pay has not accrued. Here, having determined that Section 5.3 creates a condition precedent, Global has no liability for any amounts due to Fixture except to the extent that Global has actually received funds from the Owner. It logically follows that if Global has not received funds in full from the Owner, it has not incurred a debt, nor has it defaulted or miscarried on a debt owed to Fixture. See Selective Ins., 399 N.J. Super. at 325. Consequently, Liberty may pursue its defense that it is not obligated to pay on the Surety Bond until Global becomes obligated on the debt.[9]

DATED: March 30th, 2009

    /s/Freda L. Wolfson
Freda L. Wolfson, U.S.D.J.

---

[9]

Indeed, a contrary conclusion could result in the anomalous situation of a surety presently paying a subcontractor and then, the owner making a payment to the contractor – which would obviate any duty of the surety to pay. Such a result could not be intended; the surety must enjoy the same defenses as its principal.