<u>NOT FOR PUBLICATION</u>

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

_____

FIXTURE SPECIALISTS, INC,                    :

      Plaintiff,                               :        Civil Action No. 07-5614 (FLW)

        v.                                      :

                      **OPINION**

                     :

GLOBAL CONSTRUCTION COMPANY
L.L.C., <u>et al.</u>,                          :

      Defendants.                              :
_____

<u>**WOLFSON, United States District Judge:**</u>

    Presently before the Court are motions for partial summary judgment by Plaintiff Fixture

Specialists, Inc. ("Plaintiff" or "Fixture") and Defendants Global Construction Company L.L.C.

and Liberty Mutual Insurance Company ("Defendants" or "Global").  The instant motions arise

out of a contract dispute relating to the construction of a housing project in Princeton, New

Jersey.  Global, the general contractor for the project, subcontracted with Plaintiff for plumbing

work.  The pending motions concern Global's non-payment of alleged additional work as

identified in twelve unpaid Change Order Requests as well as the non-payment of retainage. For

the reasons that follow, Plaintiff's Motion for Partial Summary Judgment is DENIED and

Defendants' Motion for Partial Summary Judgment is GRANTED.

I. BACKGROUND AND PROCEDURAL HISTORY

    Global is a construction firm which has served as a general contractor on a number of

projects, including the Estates at Princeton Junction project (the "Project"), a residential complex located in Princeton, New Jersey. Pechin Decl. ¶ 3. Fixture is a plumbing contractor that specializes in multi-family dwellings. Pl's Statement of Undisputed Facts ("Pl's Fact Statement") ¶ 1. The Project was owned by Princeton Junction Apartments, L.P. ("Owner"). Pl's Fact Statement ¶ 3.

On or around May 23, 2005, Global entered into a subcontract (the "Subcontract") with Fixture under which Fixture agreed to perform plumbing work on the Project. The Subcontract obligated Global to pay Fixture $2,262,727 for the work. The payments were to be made monthly upon application by Fixture. The Subcontract also provided that Global would withhold 10% of every progress payment (the "Retainage"). Subcontract § 5.1.

In addition, the Subcontract contained a "Pay-When-Paid" provision which states:

> 5.3 Pay When Paid – Subcontractor agrees that Contractor shall never be obligated to pay Subcontractor under any circumstances, unless and until funds are in hand received by Contractor in full, less any applicable retainage, covering the Work or material for which Subcontractor has submitted an Application for Payment. This is a condition precedent to any obligation of Contractor, and shall not be construed as a time of payment clause. This condition precedent also applies to Contractor's obligation to pay retainage, if any, Contractor shall never be obligated to pay retainage to Subcontractor until Contractor has received its retainage in hand in full. This paragraph governs all other portions of this Subcontract, and any conflicting language shall be modified or deemed to be consistent herewith.

Subcontract § 5.3.

At the same time as the parties entered into the Subcontract, they agreed on a Draw Schedule which set forth the plumbing work to be completed in each of the buildings and the monetary values for that work. Defendants' Statement of Undisputed Facts ("Defs' Fact Statement") ¶ 4; Plaintiff's Responsive Statement of Material Facts ("Pl's Resp. Fact Statement") at ¶ 4. With

2

each application for payment under the Draw Schedule ("Draw Application" or "Payment

Application"), Fixture was obligated to execute a Partial Lien Release/Waiver ("Waiver") that

provided:

> FOR AND IN CONSIDERATION of and upon receipt of check for the sum of
> $_____ representing payment for all labor performed and/or materials or
> equipment furnished to date by Subcontractor/Supplier for the Work, and all
> additional or extra labor performed or materials furnished to date, does hereby
> RELEASE, ACQUIT, and forever DISCHARGE Contractor, the Property, the
> Owner and all or either of their Sureties from any and all labor, materials, extra
> work, disputed items, debts, interest, attorney's fees, liens, claims or causes of
> action therefor, or otherwise related to the Work to the date hereof except
> retainage, if any.

> For the same consideration, the undersigned does hereby make Affidavit under
> penalties of perjury that Subcontractor/Supplier has paid, in full, for all labor
> performed or materials or equipment furnished to, or on behalf of
> Subcontractor/Supplier in connection with the Work to date and makes this
> Affidavit for the purpose of inducing the Contractor to make this payment to
> Subcontractor/Supplier as described herein, and Subcontractor/ Supplier does
> hereby agree to defend, indemnify and hold harmless Contractor, the Property,
> Owner, and any of their Sureties from any and all liens, claims or causes of action
> asserted by any person or entity which claims to have performed labor or
> furnished materials in connection with the Work performed by the undersigned.

Id. ¶ 5; Id. ¶ 5.

Between June 15, 2005 and November 27, 2006, Fixture executed thirteen Waivers to

accompany each of its thirteen Draw Applications.   Pl's Resp. Fact Statement at ¶ 9; Sims Decl.,

attachments E & I; Pechin Decl., Exhibit C.  Specifically, Fixture executed the following

Waivers:

| Payment Application | Amount of Payment | Date of Waiver |
|---|---|---|
| 1 | $154,800 | June 15, 2005 |

3

| 2 | $205,800.30 | |
| 3 | $372,233.20 | August 3, 2005 |
| 4 | $92,700 | September 16, 2005 |
| 5 | $149,382.90 | October 21, 2005 |
| 6 | $180,217.80 | December 23, 2005 |
| 7 | $131,382.90 | February 12, 2006 |
| 8 | $148,915.80 | April 7, 2006 |
| 9 | $345,973.77 | June 23, 2006 |
| 10 | $83,030.67 | July 27, 2006 |
| 11 | $98,850.46 | September, 05, 2006 |
| 12 | $88,458.70 | October 30, 2006 |
| 13 | $17,453.16 | November 27, 2006 |

Pechin Decl., Exhibit C; Sims Decl., Attach. E & I.[1]

In addition, during the course of the Project, Fixture submitted Change Order Requests to Global for payment for additional work it performed on the Project.  The Subcontract set forth the process by which any changes to the Subcontract were to occur.  Specifically, the Subcontract states:

> Contractor may at any time by a written order, sketch or other document, delivered to Subcontractor, make changes ("Changes") in the Drawings and/or Specifications of this Subcontract and/or order Subcontractor to perform extra work ("Extra Work") within the general scope thereof  . . . Contractor may also order Subcontractor to make minor changes not involving an adjustment in the Subcontract Sum . . . without a written order."

---

[1]The Court notes that although neither party attached the Waiver that accompanied Draw Application No. 2, both parties agree that the Waiver was, in fact, executed; thus, there is no issue of fact as to whether this Waiver was executed and in effect.

4

Subcontract § 11.1.

Moreover, section 11.2 provides that all claims for adjustment of the Subcontract amount "must be presented by written change order to Contractor within two (2) days from receipt of the written order to make a Change or to perform Extra Work, or said claim is waived." Id.

Thus, for example, on January 19, 2006, Fixture submitted written documentation to Global requesting approval for additional plumbing work it performed.  Sims Decl., Attach. C.  This additional work was approved by Global on October 2, 2006 in Change Order No. 4.  Sims Decl., Attach. D.  Thereafter, Fixture included a request for payment for Change Order No. 4 as part of an invoice dated October 20, 2006.  Sims Decl., ¶ 8, Attach. B.  On January 12, 2007, Global paid Fixture, in part,  for the work set forth in Change Order No. 4.

In total, Global approved $41,939.30 of Change Order work through October 20, 2006. Defs.' Fact Statement ¶ 5; Sims Decl., ¶¶ 6, 7.   Fixture, however, contends that it submitted to Global twelve Change Order Requests for additional work on the Project.   Specifically, Fixture contends that between May 15, 2006 and November 20, 2006, it submitted the following  Change Order Requests to Global:

| Change Order Request | Date | Amount Sought |
| --- | --- | --- |
| 19 | June 29, 2006 | $24,809 |
| 20 | June 29, 2006 | $35,220 |
| 21 | June 29, 2006 | $3751 |
| 22 | June 29, 2006 | $53,693 |

| 24 | June 29, 2006 | $12,143 |
| 25 | August 1, 2006 | $753 |
| 26 | May 15, 2006 | $54,327 |
| 27 | November 20, 2006 | $8,725 |
| 28 | November 20, 2006 | $16,048 |
| 29 | November 20, 2006 | $75,817 |
| 30 | November 20, 2006 | $77,131 |
| 31 | November 20, 2006 | $443,674 |

Pl's Compl. ¶ 14; Pl's Resp. Fact Statement ¶¶8,11,12; Pechin Decl., Ex. E & G.

In or around November 2006, Fixture completed the work on the Project.  Through November 2006, Global  paid Fixture $2,074,200.30 for plumbing work.  Defs.' Fact Statement ¶ 6; Pl's Resp. Fact Statement ¶ 7.  Upon completion of the Project, Plaintiff applied to Global for payment of $806,091 for the alleged additional plumbing work performed by Fixture as set forth in the twelve Change Order Requests as well as for payment of Retainage in the amount of $230,466.   Global refused to pay.

On August 27, 2007, Fixture commenced the instant action against Global in the Virginia State Court asserting a claim for breach of contract.   The action was removed to the United States District Court for the Eastern District of Virginia and, subsequently, transferred to this Court on September 13, 2007.  On June 27, 2008, Fixture filed a motion for Partial Summary Judgment which was denied by this Court on March 30, 2009 ("Opinion").  Specifically, this Court held that the language contained in the "Pay-When-Paid" clause unambiguously provided that Fixture assumed the risk of the Owner's nonpayment.   Moreover, although the parties

6

disputed whether Global had been paid by the Owner, for purposes of deciding Fixture's first motion for Partial Summary Judgment, the Court had assumed that Global had not been paid either in part or in full by the Owner.  Opinion at n.3.

Thereafter, in or around September 16, 2009, Global and Owner entered into a Release and Settlement Agreement pursuant to which Owner paid Global $500,000 to settle claims arising from a dispute between Global and the Owner relating to the Project.   Subsequently, on May 14, 2010, both Fixture and Global filed the instant motions for partial summary judgment.

## II. CROSS-MOTIONS FOR PARTIAL SUMMARY JUDGMENT

### A. Summary Judgment Standard

"Summary judgment is proper if there is no genuine issue of material fact and if, viewing the facts in the light most favorable to the non-moving party, the moving party is entitled to judgment as a matter of law." Pearson v. Component Tech. Corp., 247 F.3d 471, 482 n.1 (3d Cir. 2001) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986)); accord Fed. R. Civ. P. 56(c).  For an issue to be genuine, there must be "a sufficient evidentiary basis on which a reasonable jury could find for the non-moving party." Kaucher v. County of Bucks, 455 F.3d 418, 423 (3d Cir. 2006); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  In determining whether a genuine issue of material fact exists, the court must view the facts and all reasonable inferences drawn from those facts in the light most favorable to the nonmoving party. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986); Curley v. Klem, 298 F.3d 271, 276-77 (3d Cir. 2002).  For a fact to be material, it must have the ability to "affect the outcome of the suit under governing law." Kaucher, 455 F.3d at 423.  Disputes over

irrelevant or unnecessary facts will not preclude a grant of summary judgment.

Initially, the moving party has the burden of demonstrating the absence of a genuine issue of material fact.  Celotex Corp., 477 U.S. at 323.  Once the moving party has met this burden, the nonmoving party must identify, by affidavits or otherwise, specific facts showing that there is a genuine issue for trial.  Id.; Maidenbaum v. Bally's Park Place, Inc., 870 F. Supp. 1254, 1258 (D.N.J. 1994).  Thus, to withstand a properly supported motion for summary judgment, the nonmoving party must identify specific facts and affirmative evidence that contradict those offered by the moving party.  Anderson, 477 U.S. at 256-57.  "A nonmoving party may not 'rest upon mere allegations, general denials or . . . vague statements . . . .'"  Trap Rock Indus., Inc. v. Local 825, Int'l Union of Operating Eng'rs, 982 F.2d 884, 890 (3d Cir. 1992) (quoting Quiroga v. Hasbro, Inc., 934 F.2d 497, 500 (3d Cir. 1991)).  Moreover, the non-moving party must present "more than a scintilla of evidence showing that there is a genuine issue for trial." Woloszyn v. County of Lawrence, 396 F.3d 314, 319 (3d Cir. 2005).  Indeed, the plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. Celotex, 477 U.S. at 322.

Moreover, in deciding the merits of a party's motion for summary judgment, the court's role is not to evaluate the evidence and decide the truth of the matter, but to determine whether there is a genuine issue for trial.  Anderson, 477 U.S. at 249.  Credibility determinations are the province of the fact finder.  Big Apple BMW, Inc. v. BMW of N. Am., Inc., 974 F.2d 1358, 1363 (3d Cir. 1992).

B. Motions for Partial Summary Judgment

i. The Change Order Requests

In the instant motion, Plaintiff argues that Defendants may not assert a defense based on the "Pay-When-Paid" clause contained in the parties' agreement for the unpaid Change Order Requests.  Specifically, Fixture alleges that because Global never submitted the Change Order Requests to the Owner for payment, Global prevented Fixture from being paid for the alleged additional work contained in the Change Order Requests.   Further, Fixture argues that because certain of the Change Order Requests were pending at the time that Global settled its claims with Owner, those Change Order Requests were either settled or paid and, thus, Global must, in turn, pay Fixture.

In response, Defendants argue, in relevant part, that the "prevention doctrine" does not apply because the Change Order Requests at issue were untimely submissions for work performed without direction from Global as required by the Subcontract.  Def's Opp. Br. at 3.  In addition, Defendants argue that the disputed Change Order Requests are barred by the Partial Lien Release/Waivers executed by Fixture.

Generally speaking, the "prevention doctrine" provides that a party may not escape contractual liability by reliance upon the failure of a condition precedent where the party wrongfully prevented performance of that condition precedent." A.I.C., Ltd. v. Mapco Petroleum, Inc., 711 F. Supp. 1230, 1238 (D.De.1989). The New Jersey Supreme Court has explained:

> The principle that prevention by one party excuses performance by the other, both
> of a condition and of a promise, may be laid down broadly for all cases. This
> statement is frequently quoted. The condition is excused because the promisor has
> caused the non-performance of the condition. Therefore, it is not enough that the

9

> promisor evidently would have prevented performance of the condition. If the promisee could not or would not have performed the condition, or it would not have happened whatever had been the promisor's conduct, the condition is not excused. Any conditions which the facts show might have been performed by him, it will be assumed would have been performed if the conduct of the promisor was such as to preclude the possibility of performance.

<u>Creek Ranch, Inc. v. New Jersey Turnpike Authority</u>, 75 N.J. 421, 432 (1978) (citing 5 Williston, Contracts, § 677 at 231-232 (3d ed.1957) (footnote omitted)).

Initially, the Court notes that Fixture has failed to establish that it complied with the express provisions of the Subcontract that establish the mechanism by which Fixture was to submit Change Order Requests to Global and, presumably, by which Global would submit the Change Order Requests to the Owner for payment.  Indeed, section 11.2 of the Subcontract states that all Change Order Requests "must be presented by written change order by [Fixture]  to Contractor within two (2) days from receipt of the written order to make a change or to perform Extra Work, or said claim is waived."  Because Plaintiff has failed to provide any "written order[s]" from Global to Fixture requesting the performance of additional work and because Plaintiff has failed to establish that it presented written change orders to Global within the agreed-upon two day period, Fixture cannot establish that Global, and not Fixture itself, "caused the non-performance of the condition."  <u>Creek Ranch, Inc.</u>, 75 N.J. at 432.  For these reasons, the Court denies Fixture's Motion for Partial Summary Judgment.

However, even if Fixture could establish that it complied with the express provisions of the Subcontract in submitting the Change Order Requests to Global, the Court finds Fixture's execution of thirteen Waivers to be dispositive on the issue of the alleged additional work contained in the Change Order Requests.  Indeed, in their Motion for Partial Summary Judgment, Defendants argue that because Plaintiff executed thirteen Waivers between June 15, 2005 and

November 27, 2006, Plaintiff's claims for additional work as set forth in the Change Orders

between May 15, 2006 and November 20, 2006 and that was not contained in any previous Draw

Application are barred by the express language of the Waivers.  The Court agrees.

A court's primary objective when interpreting a contract is to derive the objective intent of

the contracting parties at the time of making the contract as revealed by the contract language.

Atlantic Northern Airlines Inc. v. Schwimmer, 12 N.J. 293, 301-02 (1953); see also Caldwell

Trucking PRP v. Rexon Technology Corp., 2005 WL 2092861, at *5 (3d Cir. August 31, 2005);

In Re Combustion Engineering, Inc., 366 F.Supp.2d 224, 229 (D.N.J. 2005); Mellon Bank, N.A.

v. Aetna Business Credit, Inc., 619 F.2d 1001, 1009 (3d Cir.1980).  Under New Jersey law,

extrinsic evidence is admissible to aid in the interpretation of an integrated agreement even when

the contract, on its face, is free from ambiguity.  Atlantic Northern Airlines Inc., 12 N.J. at

301-02.  Thus, before making a finding concerning the existence or absence of ambiguity, a court

will "consider the contract language, the meanings suggested by counsel, and the extrinsic

evidence offered in support of each interpretation."  Sheet Metal Workers, Local 19 v. 2300

Group, Inc., 949 F.2d 1274,1284 (3d Cir. 1991); see also Restatement (Second) of Contracts §

223 cmt. b (1981) ('There is no requirement that an agreement be ambiguous before evidence of

a course of dealing can be shown ...').

However, it is important "to note that extrinsic evidence of negotiations and conduct of the

parties is important to a court's analysis of whether an agreement is ambiguous only to the extent

that the evidence provides 'objective indicia that, from the linguistic reference point of the

parties, the terms of the contract are susceptible of different meanings.'"  American Cyanamid

Co. v. Fermenta Animal Health Co., 54 F.3d 177, 181 (3d Cir.1995) (citing Mellon Bank, 619

F.2d 1001, 1011 (3d Cir.1980).  Extrinsic evidence is not relevant for the purpose of changing

the writing, but for the purpose of interpreting the writing and aiding in determining the meaning

of the contract.  Atlantic Northern Airlines Inc., 12 N.J. at 301-02.  If, for example, extrinsic

evidence does not explain the meaning of the writing, but an intention that was unexpressed in

the writing, it is not relevant.  Id. Therefore, "the focus must remain on the language chosen by

the parties, and a text unambiguous when accorded the commonly understood meaning of its

words cannot be disregarded unless the extrinsic evidence ... might cause a reasonable fact finder

to understand the text differently."  American Cyanimid, 54 F.3d at 182.

Initially, the Court notes that Fixture does not argue that the Waivers at issue here are

ambiguous.   Each of the Waivers expressly state that:

> FOR AND IN CONSIDERATION of and upon receipt of check for the sum of
> $_____ representing payment for all labor performed and/or materials or
> equipment furnished to date by Subcontractor/Supplier for the Work, and all
> additional or extra labor performed or materials furnished to date, does hereby
> RELEASE, ACQUIT, and forever DISCHARGE Contractor, the Property, the
> Owner and all or either of their Sureties from any and all labor, materials, extra
> work, disputed items, debts, interest, attorney's fees, liens, claims or causes of
> action therefor, or otherwise related to the Work to the date hereof except
> retainage, if any.

Defs' Fact Statement ¶ 5(emphasis added); Pl's Resp. Fact Statement ¶¶ 5,9(emphasis added);
Sims Decl., Attach. E & I.

Thus, the plain language of the Waivers appears to release Global from all liability for

additional work performed by Fixture prior to the date of the Waiver.  However, under New

Jersey law, this Court must consider any evidence of course of dealing in construing the language

of the Waivers.  See, e.g., Sheet Metal Workers, Local 19 v. 2300 Group, Inc., 949 F.2d at 1284.

Here, Fixture does not deny that it executed thirteen Waivers between June 15, 2005 and November 27, 2006 in exchange for payment from Global.   Pechin Decl. Ex. C; Sims Decl., ¶¶ 11,14 & Attach. E & I.  Instead, Fixture argues that the parties engaged in a course of dealing with regard to the Change Order Requests that somehow took Change Orders outside the terms of the Waiver and the Subcontract.   Specifically, Plaintiff argues that the Waivers "did not accurately reflect the Subcontract price and payment status" as evidenced by the parties' course of dealing.  Pl's Opp. Br. at 9.  In other words, Plaintiff contends that because it was paid for a Change Order at a time when other Waivers had been executed, the parties "never intended that the release language" in the Waivers would bar Change Order work.  The Court does not agree.

To begin, the Court finds Plaintiff's reliance on Change Order No. 4 as an example of the parties' alleged course of dealing to be unavailing.  Indeed, the Court notes that Change Order No. 4 appears to comply entirely with the scheme set out by the Subcontract for the submission and payment of "Change" work.  Documentation detailing the work contained in Change Order No. 4 was submitted by Fixture to Global on January 19, 2006.  Sims Decl., ¶ 9, Attach. C.  This Change Order was approved by Global on October 2, 2006.  Sims Decl., ¶ 10, Attach. D.  Thereafter, Fixture requested payment for Change Order No. 4 in an invoice dated October 20, 2006.  Sims Decl., ¶ 8, Attach. B. Fixture also executed a Waiver on October 30, 2006 releasing Global from liability for all other work to date in exchange for payment of the October 20, 2006 invoice.  Sims Decl., Attachs. E & F.  In other words,  Fixture presented a written Change Order to Global as required by the Subcontract and did not request payment for that work until the Change Order was approved by Global.    Thus, rather than identify a course of dealing that would suggest that the parties intended to exempt Change Order Requests from the terms of the

13

Subcontract and Waiver, Plaintiff's reliance on Change Order No. 4 substantiates the parties'
intent to follow the scheme contemplated in the Subcontract for the submission and payment of
"Change" work.  Because Plaintiff has not presented any evidence to support a course of dealing,
the Court finds that the Change Orders at issue here are barred by the Waivers and that Plaintiff
cannot recover for alleged addition work set forth in the twelve Change Order Requests that
Plaintiff submitted to Global between May 15, 2006 and November 20, 2006.

ii.  Retainage

Plaintiff additionally alleges that it is entitled to summary judgment on its claim for $117,330
in Retainage.  Specifically, Plaintiff contends that because Global has been paid 95 percent of its
total contract by Owner, then Global must, in turn, pay Fixture 95 percent of the value of the
Subcontract.  Pl's Br. at 7-8.  Defendants, on the other hand, contend that because the total value
of the Subcontract was $2,304,666.30 – comprising the value of the Subcontract plus the
approved Change Order Requests – and that Global paid Fixture a total amount $2,074,200.30, or
90 percent of what it was owed, Global has complied with Section 5.1(d) of the Subcontract
which requires that Fixture be paid "in the amount of ninety percent (90%) of [each] Application
for Payment."  Def's Opp. Br. at 11.  Moreover, Defendants argue that Fixture is not entitled to
the Retainage it alleges that Global is holding because Global has not received its retainage from
Owner.  Indeed, Defendant argues that Owner was holding more than two million dollars
retainage from Global which it was never paid and that the only payment Global received from
Owner was the $500,000 payment following the execution of the Settlement Agreement in 2009.
In addition, Global argues that even if Fixture was entitled to a retainage payment, Global would
be entitled to a set off due to various backcharges Global incurred based on Fixture's poor

14

workmanship and delays.

Initially, Fixture does not dispute that it has been paid 90 percent of the value of the Subcontract as required by the express terms of the Subcontract.   Pl's Resp. Fact Statement ¶ 7. Thus, the Court notes that the only remaining dispute is whether Fixture is entitled to any portion of its retainage.  At this juncture, although Plaintiff has alleged that Global billed Owner for the majority of Fixture's plumbing work, the Court finds that Plaintiff has not adequately demonstrated that Global was paid in full by Owner for Fixture's plumbing work or whether Global was paid any retainage as part of Global's $500,000 settlement with Owner.  For these reasons, the Court finds that there are questions of fact as to whether Fixture is entitled to any portion of its retainage as well as whether Global would be entitled to a set off for Fixture's alleged breach of the Subcontract.   Therefore,  Fixture's Motion for Partial Summary Judgment is denied.

## III. CONCLUSION

For the foregoing reasons, Plaintiff's Motion for Partial Summary is DENIED and Defendants' Motion for Partial Summary Judgment is GRANTED.


Dated: October 29, 2010                                   /s/ Freda L. Wolfson
                                                          Freda L. Wolfson, U.S.D.J.